### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

MYRNA BURGER,

       Plaintiff,

v.

K MART CORPORATION,

       Defendant.

**No. 10-CV-3065-DEO**

**Memorandum and Opinion Order**

_____

## I.  INTRODUCTION

On November 11, 2010, Myrna Burger, Plaintiff, filed a complaint against K Mart Corporation, Defendant, alleging two Counts: (1) age discrimination in violation of the Iowa Civil Rights Act, and (2) age discrimination in violation of the Federal Age Discrimination in Employment Act. Docket No. 1. Currently before this Court is Defendant's motion for summary judgment as to both Counts. Docket No. 15.

## II.  FACTS

From April 10, 1975, to January 5, 2006, Plaintiff was an employee of K Mart Corporation in Mason City, Iowa. Docket No. 1, 2. At the time of Plaintiff's termination, she was 52 years old. Docket No. 1, 2. From 1975 to 1984, Plaintiff worked in several departments before being promoted to manager of the Camera and Jewelry departments in 1984. Docket No. 20-

2, 2.  In 2002, Plaintiff became a Lead Department Associate and received a raise.  Docket No. 20-2, 3.  In early 2004, Plaintiff became a part time employee.  Docket No. 20-2, 3. Later that year, Luis Rodriguez became the store manager of the Mason City K Mart.  Docket No. 20-2, 3.  Plaintiff requested to go back on full-time status, and Mr. Rodriguez granted her request.  Docket No. 20-2, 3.

When Plaintiff's work performance was evaluated over the course of her employment, she received overall scores indicating her work was "Satisfactory."  However, her managers occasionally noted deficiencies in specific performance categories, such as her communication with co-workers, organizational skills, sense of urgency, and neglect of responsibilities.  Docket No. 20-2, 3 and Docket No. 23-1, 5. Plaintiff also received multiple counseling actions for: failure to ensure that money or merchandise was properly secured, sales decreases, excessive waste, untimely price changes within her department, failure to approach customers in conformance with company policy, failure to appropriately prioritize work tasks, failure to punch in and out as scheduled, failure to follow up on customer requests, and lack

of flexibility in assisting in other areas.  Docket No. 20-2, 4-6.

In March of 2003, 2004, and 2005, Assistant Manager Kathy Rollefson evaluated Plaintiff's performance.  Docket No. 20-2, 5.  Mrs. Rollefson gave Plaintiff an overall assessment of "Meets Expectations." Id.  Mrs. Rollefson specifically noted that Plaintiff was good with customers, but, she also indicated Plaintiff needed improvement in the following areas: prioritizing work tasks and customer needs; supporting training and development of others; willingness to share knowledge and information; cooperating with and assisting others; completing job assignments thoroughly, accurately, and in a timely manner; showing a sense of urgency and a willingness to initiate new tasks; and keeping her work area neat and organized.  Docket No. 20-2, 6.  Plaintiff does not contend Mrs. Rollefson discriminated against her.  Docket No. 20-2, 5-6.

In October of 2005, when Plaintiff was 51 years old, Store Manager Rodriguez offered Plaintiff a full-time Front End Lead associate position at the service desk and a raise; Plaintiff accepted.  Docket No. 20-2, 7.  Two months after her promotion, in December of 2005, Plaintiff left a money bag

3

unattended in violation of K Mart policy, and Store Manager
Rodriguez issued her a Notice of Corrective Action.   Docket
No. 20-2, 8.   On January 5, 2006, Plaintiff received another
Notice because the service desk came up $100 short.   Docket
No. 20-2, 8.   At the time the register came up $100 short,
both Plaintiff and an 18 year old employee, May, were
responsible for the register.   Docket No. 23, 10.   Plaintiff
contends that, though her and May should have been held
equally responsible for the cash shortage, May was given
favorable treatment.   Docket No. 23, 10-13.   Specifically,
Plaintiff notes that May, though mentioned in the Corrective
Action Notice, never signed the bottom of it.   Docket No. 23,
11.   Plaintiff also notes that May testified that she does not
remember receiving the Notice or having a discussion with
Store Manager Rodriguez about the incident.   Docket No. 23,
11.   Defendant responds that, though May did not remember
signing the Notice or discussing the incident with Mr.
Rodriguez, she did remember being presented with a corrective
action and being counseled in relation to the incident by a
manager whom she could no longer identify.   Docket No. 23, 12.

     In the Fall of 2005, K Mart's main office began to
explore measures for cutting costs company wide.   Docket No.

20-2, 9.   One of the problem areas identified was too many full-time employees.   Docket No. 20-2, 9.   Corporate felt cutting back on full-time employees would result in cost savings and scheduling flexibility to account for trends in peak shopping times.   Docket No. 20-2, 9-10.   In January of 2006, K Mart began implementing their Workforce Adjustment Program designed to cut back on full-time employees at certain select K Mart locations.   Docket No. 20-2, 9.

In implementing the Program, store managers were provided Workforce Adjustment Guidelines that consisted of instructions for determining which full-time employees would be terminated and how.   Docket No. 20-2, 10.   Specifically, store managers were required to complete an Associate Performance Recap Form (hereinafter, "Recap Form"), rating full-time employees based on their most recent Annual Performance Evaluations and four additional objective performance indicators:   customer service, teamwork, demonstrated work habits, and effectiveness in position.   Docket No. 20-2, 11.   For the four performance indicators, store managers assigned a rating between 1 and 4. Docket No. 20-2, 11.   4 indicated an employee always satisfied performance criteria; 3 indicated an employee frequently satisfied performance criteria; 2 indicated an employee

sometimes satisfied performance criteria; and 1 indicated an employee seldom satisfied performance criteria.   Docket No. 20-2, 11.

The 2005 Annual Performance Reviews rated employees based on 22 performance indicators in 5 categories:   (1) core expectations, consisting of 6 indicators; (2) customer service, consisting of 4 indicators; (3) teamwork, consisting of 4 indicators; (4) demonstrated work habits, consisting of 4 indicators; and (5) position specific requirements, consisting of 4 indicators.   For each of the performance indicators, reviewers assigned either a "Satisfactory" or a "Needs Improvement" rating, and an employee's overall rating was based on the number of "Satisfactory" ratings they received.   Docket No. 20-2, 11.

For purposes of the Recap Form, the previous year's Annual Performance Reviews were converted to a more manageable score of 1 to 4.   Docket No. 20-2, 12.   If an employee received between 21 and 22 "Satisfactory" ratings on the Annual Performance Review, they received a 4 on their Recap Form; if they received between 17 and 20 "Satisfactory" ratings, they received a 3; if they received between 12 and 16 "Satisfactory" ratings, they received a 2; and, if they

received 11 or lower "Satisfactory" ratings on their Annual Performance Review, they received a 1.  Docket No. 20-2, 12.  The employees with the lowest total scores on the Recap Form were subject to termination.  Docket No. 20-2, 12.

In Mason City, Corporate dictated that 5 out of 14 full-time employees were to be terminated.  Docket No. 20-2, 13.  Store Manager Rodriguez completed the Recap Forms for each full-time employee and handled the terminations.  Docket No. 20-2, 13.  For purposes of the Recap Form, Plaintiff's Annual Performance Review score of 16 was converted to a 2.  Docket No. 20-2, 14.  In terms of Plaintiff's 4 new indicators, Store Manager Rodriguez assigned her a 4 for customer service, a 3 for teamwork, a 2 for demonstrated work habits, and a 2 for effectiveness in position.  Docket No. 20-2, 14.  Plaintiff's overall score on the Recap Form placed her among the bottom 5 employees.  Docket No. 20-2, 14-15.

K Mart Corporate, at the time of the lay-offs, had provided store managers instructions and a script to follow when telling employees they were terminated.  Docket No. 20-3, 8.  The instructions stated, "It is very critical that you do not deviate from the scripts in any way."  Docket No. 21-1, 75.  Plaintiff claims Store Manager Rodriguez violated the

7

script when he raised the issue of the $100 cash shortage when terminating her.  Docket No. 20-3, 8.

On November 14, 2005, Store Manager Rodriguez completed a Performance Review for Teresa Giere.  Mrs. Giere, at 24 years old, was the youngest employee subject to the layoffs in Mason City.  Within her Performance Review, Store Manager Rodriguez gave her a score of 3 for customer service, a score of 3 for teamwork, a score of 2 for demonstrated work habits, and a score of 2 for effectiveness in position.  Docket No. 21-1, 76.  However, when scoring her for purposes of the Work Adjustment less than a month later, Store Manager Rodriguez gave her a 3 for customer service, a 4 for teamwork, a score of 4 for demonstrated work habits, and a score of 3 for effectiveness in position.  Docket No. 20-5, 54.  If there was a significant change between an employee's last regular appraisal score and an employee's score on the 4 new appraisal categories on the Recap Form, store managers were required to document reasons for the difference, and, with respect to Mrs. Giere, Store Manager Rodriguez failed to do so.  Docket No. 21-1, 70.

The average age of the 5 employees terminated was 45.2. Docket No. 20-2, 14.  The average age of the 9 employees

8

retained was 44.7.   Docket No. 20-2, 14.   The Mason City K
Mart's 3 oldest full-time employees, Linda Jahneke (age 53),
LeAnna Kirk (age 56), and Carolyn Anderson (age 58), were all
retained.   Docket No. 20-2, 14.   In a deposition, Plaintiff
testified that the only two full-time associates at the Mason
City K Mart she believed should have been terminated instead
of her were LeAnna Kirk and Carolyn Anderson, both of whom are
older than Plaintiff.   Docket No. 20-2, 16.

On July 24, 2005, and again on September 26, 2005,
Notices of Corrective Action were filed against Debra Kay
Luger, a K Mart employee of 28 years.   In a section labeled
"Associate Comments," Mrs. Luger wrote,

> I'm being harassed & criticized without any
> warnings.  I'm being treated unfair . . .
> I feel I'm being harassed because of my age
> & years I have been employed.  The younger
> & part-time employees get treated
> differently.  They get treated better.

Docket No. 21-2, 78-80.

Victoria A. Lambertsen, a former co-worker of Plaintiff,
testified she over heard a group of managers discussing the
need for younger slender people in the women's apparel
department.   Docket No. 20-5, 31.   Jeffrey Burger, another
former co-worker of Plaintiff, testified that he heard Kyle
Johnson, a regional manager and Mr. Rodriguez's superior,

state, in a store meeting, that the store was failing because they had "too many old people in the store." Docket No. 20-5, 4. According to Mr. Burger, Regional Manager Johnson went on to imply that customers are more likely to buy products from a high school teenager than someone over forty. Docket No. 20-5, 4. Linda Adams, another former K Mart employee, testified she heard Regional Manager Johnson state that K Mart needed "younger employees to wear the clothes and show off what we had." Docket No. 20-5, 2. Steven Pelham, another former K Mart employee, testified that he overheard Regional Manager Johnson say that K Mart needed younger, more attractive employees like Target. Docket No. 20-5, 48. Mrs. Luger testified that when she met with Regional Manager Johnson in relation to her claim that she was being harassed because of her age, he told her, "Life is not fair." Docket No. 20-5, 25. Mrs. Luger also testified she heard Regional Manager Johnson ask, "Has anybody been to Target and looked at their employees? They are young, good-looking. Why can't we hire employees like that?" Docket No. 20-5, 36. According to Mrs. Luger, Regional Manager Johnson continued on to say that longevity was bankrupting K Mart. Docket No. 20-5, 36. Plaintiff testified that Regional Manager Johnson told her, in

a conversation in the ladies clothing department, that "[a] young person is the only one that can sell this type of clothing.  You're too old.  You wouldn't understand the techniques."  Docket No. 20-5, 7.

Mr. Burger also testified that Store Manager Rodriguez often praised the job performance of young employees but downplayed the achievements of older employees.  Docket No. 20-5, 5.  Kelly Moritz, a former K Mart employee, testified that Store Manager Rodriguez was always discussing "how much fun" the kids were, and that, on several occasions, he specifically requested that the "kids" be scheduled out on the sales floor.  Docket No. 20-5, 6.  Mrs. Luger also testified she heard Store Manager Rodriguez say the store needed "young people in fashions that can actually wear the clothes" and "[b]ring their young friends in to increase sales."  Docket No. 20-5, 37.  According to Mrs. Luger, Mr. Rodriguez then added, "older employees [are] not exciting enough."  Docket No. 20-5, 37.  She also testified that Store Manager Rodriguez generally treated the younger employees better; younger employees "didn't have to work hard;" and Store Manager Rodriguez "would stand up front at night at the desk laughing and joking with [the younger employees] while the full-time

department managers were straightening the whole store and working hard . . . ." Docket No. 20-5, 38. Kathy Rollefson, Assistant Manager of the Mason City K Mart and Plaintiff's long-time superior, testified she felt that, based on her observations, Mr. Rodriguez favored younger employees over the older employees. Docket No. 20-5, 61. Plaintiff testified that Store Manager Rodriguez generally forgave young employees for their infractions but failed to treat her in a similar fashion in similar circumstances. Docket No. 20-5, 13. Finally, Mrs. Lambertsen felt Store Manager Rodriguez targeted the older ladies for ridicule and was strict and rigid with them. Docket No. 20-5, 32-33. In relation to the younger employees, Mrs. Lambertsen felt Manager Rodriguez was "happy and giggly and chatty - just a very different person." Docket No. 20-5, 33.

III.  **MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is material if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of

proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  There is a genuine issue as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771 (8th Cir. 1995).  This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. <u>See Matsushita</u>, 475 U.S. at 587; and <u>Morris v. City of Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th

Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323).  Once the movant
has carried his burden, the non-moving party is required "to
go beyond the pleadings" and through "affidavits, or by the
'depositions, answers to interrogatories, and admissions on
file,' designate specific facts showing that there is a
genuine issue for trial.'"  <u>Celotex</u>, 477 U.S. at 423 (citing
Fed. R. Civ. P. 56(e)).

## IV.   AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

In pertinent part, the ADEA provides that it is "unlawful
for an employer . . . to discharge any individual . . .
because of such individual's age" and provides a right to file
a civil action for those who believe they have been wrongfully
terminated due to age discrimination.  29 U.S.C. §§ 623(a) and
626(c).

"A plaintiff may establish a claim of intentional age
discrimination through either direct evidence or indirect
evidence." <u>King v. U.S.</u>, 553 F.3d 1156, 1160 (8th Cir. 2009)
(citing <u>Fitzgerald v. Action, Inc.</u>, 521 F.3d 867, 876 (8th
Cir. 2008).  "Evidence is 'direct' if it establishes 'a
specific link between the [alleged] discriminatory animus and
the challenged decision, sufficient'" to support the
reasonable inference that discrimination "'actually

motivated'" the employer's decision.  <u>Putman v. Unity Health System</u>, 348 F.3d 732 (8th Cir. 2003) (quoting <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997).  In this case, both parties impliedly concede that Plaintiff has presented only indirect evidence of age discrimination.  In cases involving indirect evidence, the Eighth Circuit employs the <u>McDonnell Douglas</u> burden-shifting framework.  <u>Tusing v. Des Moines Independent Community School Dist.</u>, 639 F.3d 507 (8th Cir. 2011).

Under the <u>McDonnell Douglas</u> burden shifting framework, a plaintiff must first establish a *prima facie* case.  <u>Ward v. International Paper Co.</u>, 509 F.3d 457, (8th Cir. 2007).  In order to establish a *prima facie* case under the ADEA, a plaintiff must establish:  (1) they are at least 40 years old; (2) they met "applicable job qualifications;" (3) they "suffered an adverse employment action;" and (4) "age was a factor in their termination."[1]  <u>Hutson v. McDonnell Douglas</u>

---

[1]  The fourth element, "age was a factor in their termination," only applies in situations in which the employer is experiencing a reduction in force.  <u>Holley v. Sanyo Mfg., Inc.</u>, 771 F.2d 1161, 1165 (8th Cir. 1985).  In cases that do not involve discharges in relation to a reduction in force, the fourth element merely requires that the employer have "hired a younger person to fill the position."  <u>Tusing</u>, 639 F.3d at 515.

<u>Corp.</u>, 63 F.3d 771, 776 (8th Cir. 1996) (citations omitted).

Once "a plaintiff establishes a *prima facie* case of

discrimination, the burden of production then shifts to the

defendant to articulate a legitimate, non-discriminatory

reason for the adverse employment action." <u>Hutson,</u> 63 F.3d at

777 (citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502,

507-08 (1993).  If a defendant fails to provide a legitimate,

non-discriminatory reason for the adverse employment action,

a violation of the ADEA is presumed.  <u>Hutson</u>, 63 F.3d at 777.

If a defendant succeeds in providing a legitimate, non-

discriminatory reason for the adverse employment action, the

burden then shifts back to the plaintiff to show that the

defendant's explanation is a pretext for discrimination.

<u>Hutson</u>, 63 F.3d at 777 (citing <u>Hicks</u>, 509 U.S. at 515-16).

Since the Supreme Court's Decision in <u>Gross v. FBL</u>

<u>Financial Services, Inc.</u>, a plaintiff at the final stage of

the <u>McDonnell Douglas</u> burden shifting standard must show that

age was "the 'but-for' cause of the employer's decision."[2]

---

[2] Prior to the Supreme Court's ruling in <u>Gross v. FBL</u>
<u>Financial Services, Inc.</u>, courts employed the <u>Price Waterhouse</u>
mixed motives standard whereby an employer who considered both
discriminatory and non-discriminatory factors in making an
adverse employment decision was engaged in discrimination,
regardless of whether, "in the context of litigation," it
appears "the decision would have been the same if" the
discriminatory factor "had not been taken into account."

Tusing v. Des Moines Independent Community School Dist., 639
F.3d 507, 517 (8th Cir. 2011) (citing Gross v. FBL Financial
Services, Inc., 129 S. Ct. 2343, 2351 (2009).  A plaintiff
must not only show that the employer's purported reason for
terminating him was false but also "that age discrimination
was the real reason."  Id. (citations omitted).  In the
summary judgment context, there must be sufficient evidence to
(1) create "a fact issue as to whether the defendant's
proffered reasons are pretextual" and (2) create "a reasonable
inference that age was a determinative factor in the adverse
employment decision."  Id. (citations omitted).  A
"'determinative factor'" is "'one that made a difference in
deciding whether the plaintiff should be employed.'"  Gross v.
FBL Financial Services, Inc., 588 F.3d 614, 621 (8th Cir.
2009) (citing Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir.
1980).

In the case at bar, Defendant impliedly concedes that
Plaintiff established a *prima facie* case and contends
Plaintiff was terminated based upon K Marts legitimate, non-
discriminatory procedures outlined in the Workforce Adjustment
Guidelines.  Docket No. 15-2, 3.  Thus, the general questions

---

Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989).

presented are whether a reasonable jury could conclude that the Workforce Adjustment Guidelines were used as a pretext and whether discrimination was the "but for" cause of Plaintiff's termination.

## A.  Regional Manager Kyle Johnson

Much of the evidence Plaintiff relies on to create the inference that Store Manager Rodriguez was age biased relates to his superior, Regional Manager Kyle Johnson.  As previously noted, there is testimony on record that Mr. Johnson made comments to the effect that K Mart was failing because they had too many old employees, K Mart needed younger better looking employees like Target, and customers prefer to buy things from younger employees.  Furthermore, Debra Luger testified that when she formally complained that Mr. Rodriguez was discriminating against her because of her age, Mr. Johnson, in a subsequent meeting, dealt with the situation by telling her that "Life is not fair."[3]  Docket No. 23, 20.

---

[3] Defendant notes that "Luger does not allege that she met with Johnson in response to, or regarding a complaint of 'age' -related harassment, discrimination, or other treatment." Docket No. 23, 20.  After reading Mrs. Luger's deposition, this Court disagrees; it is clear that the meeting was in relation to Mrs. Luger's claims of age based discrimination.

Defendant contends Mr. Johnson's alleged comments are "stray remarks" made by a "non-decisionmaker," and, as such, cannot give rise to an inference of age discrimination or demonstrate pretext. Docket No. 15-2, 19 (citing Girten v. McRentals, Inc., 337 F.3d 979, 982-83 (8th Cir. 2003). The line between decisionmaker and non-decisionmaker is often murky, and there is some evidence indicating Mr. Johnson was directly involved in implementing the Workforce Adjustment Guidelines. For instance, both parties concede that Mr. Johnson was responsible for delivering a time line to his store managers, delivering directions to his store managers, being available for questions from his store managers, receiving the ranking sheets from his store managers, and sending the ranking sheets to Corporate. Docket No. 23, 3. In addition, K Mart policy required Mr. Johnson, as regional manager, to review and approve any terminations related to the Workforce Adjustments. Finally, in answer to an interrogatory, Defendant admits that Mr. Rodriguez and Mr. Johnson "communicated regarding the January 2006 [W]orkforce [A]djustment [G]uidelines and Mr. Rodriguez's ranking of full-time employees at his store based on those guidelines . . . ." Docket No. 20-5, 64.

19

On the other hand, Defendant notes that Chris Jemo, Off Mall – Talent & Human Capital Services Director for K Mart, testified that, though regional managers functioned in an administrative role in relation to the Workforce Adjustments, "the store manager was the one that had the inherent knowledge of his or her associates, and they were the ones best equipped to rank their associates . . . ." Docket No. 23, 4. Furthermore, Mr. Rodriguez, prior to the Workforce Adjustments, had put in his notice with K Mart, indicating he may not have been as susceptible to Mr. Johnson's influence as he was in the past. Docket No. 15-3, 15.

While it is clear Mr. Rodriguez, rather than Mr. Johnson, actually completed the Recap Form that ultimately led to Plaintiff's termination, Mr. Johnson, as his superior, clearly had the authority and opportunity to influence Mr. Rodriguez's determinations. There is also evidence indicating Mr. Rodriguez was willing to go to great lengths to meet Mr. Johnson's expectations. For instance, Mr. Rodriguez testified that he, in order to meet Mr. Johnson's demands related to the sale of "smart plans," had someone purchase "smart plans" and then return them for a full refund at a later date. Docket No. 23, 26. Furthermore, since there is testimony from

20

multiple witnesses indicating Mr. Johnson was brazen enough to openly state that K Mart's primary problem was the old age of its employees in a store meeting only 6 months prior to the Workforce Adjustment, a reasonable jury could conclude that he, as boss, fostered a corporate culture indicative of age discrimination, and, in some circumstances, this will be sufficient to build a circumstantial case of discrimination. See Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3rd Cir. 1995) (noting "that a supervisor's statement about the employer's employment practice or managerial policy is relevant to show the corporate culture in which a company makes its employment decision, and may be used to build a circumstantial case of discrimination.")

**B.   Store Manager Luis Rodriguez**

As previously noted, there is evidence that Store Manager Rodriguez favored the younger employees while disfavoring the older employees.   For instance, there is testimony that Mr. Rodriguez praised the job performance of younger employees but downplayed the achievements of older employees; that he specifically requested that younger employees be scheduled to the sales floor; that he discussed how the store needed young people in fashions to actually wear the clothes and bring in

21

their friends to the store; that he stated older employees were not exciting enough; that he made older employees work harder; and that he targeted older employees for ridicule but was lenient and sociable with younger employees. When Plaintiff was given a Notice of Corrective action because her and another 18 year old employee's cash register was $100.00 short, there is some indication Plaintiff was given the more serious punishment of the two, though they were both equally responsible; in addition, Plaintiff claims Mr. Rodriguez actually discussed this incident when terminating her in violation of the Workforce Adjustment Guidelines. Finally, in an official Notice of Corrective Action during Mr. Rodriguez's tenure as Store Manager, Mrs. Luger commented that she felt like management was harassing her because of her age and the number of years she had been employed.

On the other hand, Defendant notes that Steven Pelham, a 59 year old K Mart employee, testified he thought he was one of Mr. Rodriguez's "favorites," and that Mr. Rodriguez encouraged him to seek a promotion in 2005. Docket No. 15-2, 18 Fn. 10 and Docket No. 16-5. Defendant also notes that in October of 2005, four months prior to Plaintiff's termination and before Corporate's decision to have a workforce reduction,

Mr. Rodriguez promoted Plaintiff to a full-time Front End Lead associate position at the service desk.[4]  Docket No. 15-3, 6. The fact that Mr. Rodriguez gave Plaintiff a promotion four months prior to terminating her pursuant to a company wide work force reduction certainly runs counter "to any reasonable inference of discrimination based on age." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337 (8th Cir. 1996) (dealing with a plaintiff who was hired at 43 and fired at 46).  However, there is no indication that younger employees were competing for the promotion, and so the circumstances were different from those surrounding the Workforce Adjustment.

## C.  The Workforce Adjustment Guidelines

Neither party disputes that Plaintiff was terminated pursuant to the Work Force Adjustment Guidelines.  However, the question remains as to whether, despite the safeguards built into the Workforce Adjustment Guidelines, a reasonable

---

[4] Plaintiff testified that she felt this promotion was designed to set Plaintiff up for failure, but her testimony is mere speculation.  There is no evidence to support her claim. Her transfer took place before Corporate developed the Workforce Adjustment Program, and Plaintiff had worked at the service desk before and testified that it was no different than ringing up customers in the jewelry department.  Docket No. 15-2, 18.

jury could conclude that Mr. Johnson's and Mr. Rodriguez's age biases were determinative factors in Plaintiff's termination. While employers are wise to create uniform guidelines to make adverse employment decisions, they are not fool proof means of avoiding liability.  To the extent that guidelines rely on supervisor evaluations of employees, the results derived therefrom could still reflect a supervisor's biases.  If guidelines rely on the judgments of a supervisor, and a plaintiff shows a supervisor is biased, there is a fact issue as to whether or not the guidelines served as a pretext for discrimination.

As previously noted, K Mart's Workforce Adjustment Guidelines required store managers to fill out a Recap Form which used a score sheet to determine who would be laid off. The score sheet was an aggregate of an employee's last Annual Evaluation scores and new performance indicator scores.  Mrs. Rollefson completed Plaintiff's last Annual Evaluation, and since Plaintiff does not contend that Mrs. Rollefson discriminated against her, it can be said, as a matter of law, that the final results represented in the Recap Form were, at least to some extent, based on objectively reasonable, non-discriminatory criteria.

Defendant notes that Plaintiff's four performance indicators, for which Store Manager Rodriguez was responsible, mirrored four categories on Plaintiff's Annual Review, for which Mrs. Rollefson was responsible. Store Manager Rodriguez, in comparison to the scores assigned by Mrs. Rollefson, gave Plaintiff a one point lower rating in a category, the same rating in a category, and a one point higher rating in two categories. In addition, Plaintiff's last Annual Evaluation score, when converted under the formula provided for in the Recap Form, came to a two on a scale of one to four; and Store Manager Rodriguez gave Plaintiff scores of four, three, two, and two on scales of one to four on the new performance indicators. Thus, under both manners of viewing the scores, Store Manager Rodriguez gave Plaintiff higher scores than Mrs. Rollefson. In addition, the comments and scores Mr. Rodriguez provided on Plaintiff's recap form are consistent with Mrs. Rollefson's comments and Plaintiff's own assessments of her work performance. For instance, Mr. Rodriguez noted that Plaintiff, though she was "'very customer friendly . . . [lost control] of [the] front end too often' and had 'organizational issues.'" Docket No. 15-2, 20 (citing Docket No. 15-3, 14). In Plaintiff's last Annual Review, Mrs.

Rollefson noted that Plaintiff was "good with customers" but needed improvement in completing job assignments thoroughly, accurately, and in a timely manner. Docket No. 15-3, 5. Mrs. Rollefson also commented that Plaintiff needed to keep her area organized so that others could find things in her absence. When questioned in her deposition, Plaintiff, though she disagreed with certain aspects of Mrs. Rollefson's Assessment, generally felt that Mrs. Rollefson was fair and agreed with her assessment in these areas. Docket No. 16-2, 39-40.

Still, when scoring a group of people in competition, the scorer may manipulate the final results to reflect his personal biases in one of two ways: (1) he may unfairly decrease the scores of those whom he is biased against; or (2) he may unfairly increase the scores of those whom he favors. Plaintiff has presented evidence that Store Manager Rodriguez may have unfairly increased the scores of younger employees. As previously noted, Store Manager Rodriguez had completed Teresa Giere's Annual Employment Evaluation only a month before he scored her in relation to the four new performance indicators on the Recap Form, and, at 24 years old, Mrs. Giere was the youngest employee subject to termination. Store

26

Manager Rodriguez gave Mrs. Giere the same score in a category, increased her score by one in two categories, and increased her score by two in a category.  When questioned about this in his deposition, Mr. Rodriguez could not remember why her scores increased so significantly, and, though he was, according to the Recap Form instructions, supposed to explain significant increases in score on the Recap Form, he failed to do so.

Finally, the overall results of the Workforce Adjustment are not indicative of age discrimination.  As previously noted, the average age of the employees terminated was 45.2, and the average age of the employees retained was 44.7. Similarly, prior to the lay-offs, the average age of the fourteen full-time employees was 44.93 years, and, after the lay-offs, the average age of the remaining employees was 44.78 years.  Out of the fourteen full-time employees prior to the lay-offs, the three oldest were retained.  Furthermore, when questioned in a deposition, Plaintiff identified only two employees whom she felt should have been terminated other than herself, and those two employees were both older than her. Overall, the statistical evidence and Plaintiff's testimony strongly favors the inference that Mr. Rodriguez implemented

the Workforce Adjustment Guidelines fairly and without a discriminatory purpose.

### D.  Conclusion

This Court is persuaded that a reasonable jury could conclude that both Mr. Johnson and Mr. Rodriguez made work based decisions based on agism, and so, to the extent that their judgments were reflected in the Recap Form, there is a fact issue as to whether the Workforce Adjustment Guidelines were used as a pretext for discrimination.  However, since the Supreme Court's decision in <u>Gross</u>, Plaintiff must also show that Mr. Johnson's and Mr. Rodriguez's alleged agism was a determinative factor in her termination.  While the record presents a close question, after careful consideration of the evidence, this Court is persuaded that a reasonable jury <u>could not</u> conclude that age discrimination was the "but for" cause of Plaintiff's termination.  **<u>Therefore, Defendant's motion for summary judgment of Plaintiff's ADEA cause of action is granted.</u>**

## V.  IOWA CIVIL RIGHTS ACT

The Iowa Civil Rights Act is found at Chapter 216 of the Iowa Code.  Section 216.6 of the Civil Rights Act provides that it is a "discriminatory practice" for an employer to

28

discharge an employee "because of" the employee's age.   Iowa Code § 216.6.

When considering Iowa Civil Rights Act claims based on circumstantial evidence, Iowa Courts, like Federal Courts considering ADEA claims, apply the McDonnell Douglas burden shifting framework.   Deboom v. Raining Rose, Inc., 772 N.W.2d 1, 6 (Iowa 2009).   In order to establish a *prima facie* case, Plaintiff must establish:  (1) she was a member of a protected class; "(2) she was qualified for her position, and (3) her termination occurred under circumstances giving rise to an inference of discrimination." Deboom, 772 N.W.2d at 6 (citing Smidt v. Porter, 695 N.W.2d 9, 14 (Iowa 2005)).   Just as with ADEA cases, once a *prima facie* case is established, "[t]he burden  . . .  shifts to the defendant 'to offer a legitimate[,] nondiscriminatory reason for the termination.'" Id.   If a defendant fails to offer a legitimate, nondiscriminatory reason for a plaintiff's termination, a plaintiff must then show a defendant's purported reason for terminating him or her was a pretext for discrimination. Deboom, 772 N.W.2d at 9, 11, and 12.   However, under Iowa Supreme Court precedent, a plaintiff need not show that age discrimination was the "but for" cause of the employer's

29

decision to terminate plaintiff, but only a motivating factor. Unlawful discrimination is "a 'motivating factor,' if" a plaintiff's age "played a part . . . in the defendant's decision to" terminate "the plaintiff." Iowa Civil Jury Instructions § 9.04 (2012). Whereas under Federal Law, a plaintiff must demonstrate that there is a fact issue as to whether age discrimination was the "real reason" for their termination, under Iowa State law a plaintiff must only establish a fact issue as to whether a discriminatory "consideration . . . moved the defendant towards the decision . . . ." Jensen v. Prime Time, Ltd., 728 N.W.2d 223, 3 (Iowa App. 2006).

As with Plaintiff's ADEA claim, both parties concede Plaintiff met her burden of presenting a *prima facie* case; and both parties concede Defendant offered a legitimate, nondiscriminatory reason for her termination. Thus, the questions presented are whether Plaintiff has set forth sufficient evidence to allow a reasonable trier of fact to infer that Defendant's non-discriminatory justification for Plaintiff's termination was a pretext and whether age discrimination was a motivating factor in Plaintiff's termination.

As with Plaintiff's ADEA claim, since a reasonable jury could infer that Regional Manager Johnson and Store Manager Rodriguez made work decisions based on agism, and their judgments, especially those of Store Manager Rodriguez, were reflected in the scores ultimately assigned on the Recap Form, there is a question of fact as to whether the Workforce Adjustment Guidelines were used as a pretext for discrimination.  As to whether discrimination was a motivating factor in Plaintiff's termination, the record before this Court again presents a close question.   After careful consideration of the record, this Court is persuaded that, though a reasonable jury could not conclude age discrimination was the "but for" cause of Plaintiff's termination, they could conclude age discrimination was a motivating factor in Plaintiff's termination.  **Therefore, Defendant's motion for summary judgment as to Plaintiff's Iowa Civil Rights Act cause of action is denied.**

## VI.   CONCLUSION

**Defendant's motion for summary judgment (Docket No. 15) is hereby granted as to Plaintiff's Age Discrimination in Employment Act claim and denied as to Plaintiff's Iowa Civil Rights Act claim.**

31

**IT IS SO ORDERED** this 28th day of June, 2012.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa